Chipman *vs.* Stansbury, Adm'x of Cass.

(Decided June 15th, 1860.)

---

GEORGE CHIPMAN *vs.* JANE E. STANSBURY,
Adm'x of MOSES T. CASS.

A prayer that, so far as the claim for certain services is concerned, "the plaintiff is not entitled to recover," is obviously against the intent of the Act of 1825, ch. 117.

A prayer, general in its application to the case, and not indicating to which of two contracts for services, proved to have been made between the parties, it was intended to apply, and by its application to one injury would result to the plaintiff, is erroneous.

APPEAL from the Court of Common Pleas.

Action by the appellee against the appellant, brought on the 27th of April 1858, to recover for work and services done and rendered by Cass, the plaintiff's intestate, for the defendant. The amount claimed by the bill of particulars was $380.64½. Plea, never indebted as alleged.

*Exception.* The plaintiff offered in evidence a written agreement, dated the 1st of January 1856, by which the defendant agreed to pay Cass "for his services rendered yearly, as heretofore, to superintend" his (the defendant's) broom factory, "the sum of $1250 *per* year, or in this proportion for whatever time he" (Cass) "may remain in" the defendant's "employ, from the date of this agreement," and Cass was to continue "his services as herein specified, say for one or five years at the option of said Chipman." Under this contract, Cass

rendered service and received pay, from time to time, through the year 1856, and entered upon service for the year 1857, and continued to render such as his health permitted him to do, and was not discharged by the defendant up to the time of his death, on the 23rd of January 1858, when he died of consumption. It was further proved, by his physician, that Cass had been a feeble man and consumptively inclined for many years, unable to perform any severe physical labor; that early in 1857, his indisposition became more severe, and he was not able to do a day's manual labor after the 1st of March 1857, but being a man of great energy, he continued to go about to his place of employment for some months subsequent to that date; that on the 1st of November 1857, he was very low and confined to his bed and unable to do any thing, that he subsequently rallied, and was able to go out of doors, but soon after had another relapse, and died in January 1858. *Shannon*, the assistant and successor of Cass, testified that he attended to Cass' duties when he was unable to be present; that Cass rendered no service at the shop or factory after the 1st of October 1857, and was from feebleness often absent prior to that date, for one or two days at a time; that about three weeks prior to his death, Cass told witness that the agreement between him and Mr. Chipman had been changed, and that the latter was to give him $10 a week till he was able to resume work, that he did not like to take so much from Mr. Chipman as he had received before, since he could render no service, and they had agreed upon $10 a week, but he did not state when the change of bargain was made, or the changed rate of salary began; that witness, after Cass became unable to go to the factory, was accustomed from time to time, to go to his house to talk over, with him, how they were getting along, and to consult with him in reference to the business, and that witness did this at the instance of the defendant, and went sometimes four or five times a week, and sometimes not more than once or twice, and he continued these visits until the day preceding the death of Cass; that from the nature of the business, it was impossible for a person to superintend it without being personally pre-

sent. at the factory; witness understood that Cass was the inventor of the machinery used in defendant's factory, and that it was built under his superintendence; there were from eighteen to twenty-eight hands in the employ of the defendant, and it was part of Cass' duties to keep the time of the hands; witness received no increase of pay until March 1858. The defendant then offered three prayers:

1st. That so far as the claim of compensation for $78.12½ for three weeks' services in January 1858, is concerned, the plaintiff is not entitled to recover.

2nd. That if the jury are satisfied, from the evidence, that the plaintiff's intestate was rendered unable, by sickness, to discharge the duties which he covenanted and was employed to discharge, then the plaintiff is entitled to recover only such sum as the jury shall find was the real value of the service actually rendered, diminished by such sum as they shall find from the evidence was paid him on account of such services.

3rd. That if the jury shall find, from the evidence, that after the sickness of the plaintiff's intestate, a new bargain was made between him and the defendant, then the plaintiff is entitled to recover only such sum as the balance. may be found to be, on a proper statement of account, in accordance with such supplemental bargain or agreement.

The court (MARSHALL, J.) rejected the *first* and *second* prayers, and to this ruling the defendant excepted. The verdict was in favor of the plaintiff for $371.91, and from the judgment thereon the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*H. Stockbridge*, for the appellant, argued:

1st. That the appellee is not entitled to recover under the original agreement between Cass and the appellant for the three weeks services in 1858, inasmuch as that agreement had been violated and broken, without default on the part of the appellant, and no service was rendered during that time by Cass to the appellant.

2nd. That neither is he entitled to recover for the same time under the supplemental arrangement testified to by Shannon; the evidence showing that during that time Cass rendered the appellant no service whatever, so that the undertaking to pay the $10 a week, if ever made, was without mutuality and void as a *nudum pactum*.

3rd. That the defendant's second prayer was improperly rejected. The performance of service by Cass was a condition precedent to the right to recover pay of the defendant. If, without cause, he failed to render the service which he had contracted to perform, he could have no claim on the defendant, for any service rendered under the contract prior to his default. If, in consequence of sickness or death—the act of God—the contract was broken, though he might be excused from liability to the defendant for damages from violation of contract, yet he would be entitled to claim, at most, only what was the actual value of the service rendered less the amount paid on account of these services. 4 *Ala.*, 336, *Givahn vs. Dailey's Adm'x.* 7 *Ala.*, 753, *Hunter vs. Waldron.* 1 *Williams*, 759, *Patrick vs. Putman.* *Ibid.*, 645, *Hubbard vs. Belden.* 20 *Maine*, 453, *Dickey vs. Linscott.* 2 *Kernan*, 107, *Harmony vs. Bingham.* 6 *New. Hamp.*, 481, *Britton vs. Turner.* 11 *Vermont*, 557, *Fenton vs. Clark.*

4th. That the error in the prayer, if any, consisted in not claiming that the amount due for service actually rendered, should be reduced by the amount of damages sustained by the defendant in consequence of Cass not being able to complete his year of service. But this error was not one to which the plaintiff could object, nor on account of which the court should have rejected the prayer, as it was perfectly competent for the defendant to waive his right, if he was willing so to do, and inasmuch as this error was no injury to plaintiff, and his bill of particulars filed in the cause shows that the defendant paid Cass for a longer time than he rendered service, the judgment should be reversed and no *procedendo* awarded.

*Wm. A. Stewart,* for the appellee, argued:

1st. The defendant's first prayer was properly refused, because it tended to mislead the jury, and also because, since the Act of 1825, ch. 117, the court has invariably decided that it must reject a general prayer that the plaintiff is not entitled to recover. 2 *G. & J.,* 302, *Davis vs. Leab.* 3 *G. & J.,* 369, *Penn vs. Flack.* 12 *G. & J.,* 236, *Gray vs. Cook.* 7 *Gill,* 343, *Wheeler vs. State.*

2nd. Evidence had been offered by the appellant to show that a new agreement had been entered into between the parties, and as the third prayer of the appellant, which was granted, fully covered the whole ground, it was for the jury to determine the facts whether or not such new agreement had been made, when it was to take effect, and what were its terms. The court is entitled absolutely to reject a prayer, if at all erroneous. 12 *G. & J.,* 484, *Doyle vs. Commissioners of Balto. county.*

3rd. The second prayer was properly refused in that it trenched upon the province of the jury, who alone, are to decide upon the facts, and assumed that Cass *covenanted* to perform certain duties, there being no other evidence than the written agreement between the parties which is *not under seal,* and also in seeking to change the terms of the contract solemnly entered into between the parties. It was within the power of the appellant to terminate the agreement, as he had written the instrument and reserved the option to do so, but Cass had no such power, and was left to the mercy of the appellant, and the fact that the appellant retained his services till his death, and that only on the day prior thereto he was consulted in reference to the business of the appellant, shows that the relation between the parties was still subsisting. 9 *Md. Rep.,* 52, *Peterson vs. Ellicott. Ibid.,* 216, *Hancy vs. Marshall.* 10 *Md. Rep.,* 118, *Boyd vs. McCann.* 13 *Md. Rep,,* 190, *Cropper vs. Pittman. Ibid.,* 469, *Cooke's lessee vs. Kell.*

4th. The doctrine contended for by the appellant in his third point, is not borne out by the authorities he quotes. The case in 4 *Ala.,* 336, is based on the familiar principle

relating to the entirety of contracts, laid down in *Cutter vs. Powell,* and has never been adopted in any other State, and the court which gave the decision felt constrained to make an apology for it, in a subsequent case in 7 *Ala.,* 757. Seamen, disabled by accident in course of duty, sickness, or other cause over which they can exercise no control, are entitled to wages for the whole voyage. 2 *H. Bl.,* 606, *Chandler vs. Grieves.* 4 *East.,* 546, *Beale vs. Thompson.* In relation to the hiring of slaves, the rule is, that the party to whom a slave is hired, for a year, is entitled to no abatement of the price, because of sickness, after the commencement of the term. 11 *Georgia,* 109, *Lennard vs. Boynton.* 14 *Georgia,* 259, *Latimer vs. Alexander.* The true rule on the subject is laid down by *Lord Campbell* in *Cuckson vs. Stone:* "Where the plaintiff, by the visitation of God, has become, by paralysis or other bodily illness, permanently incompetent to act, the defendant may determine the contract. But he would not be considered incompetent from illness of a temporary nature, and if defendant receive his services, or do not rescind the contract, there can be no suspension of salary, by reason of the plaintiff's illness or inability to work, no matter what the duration of the disability may be." 7 *Am. Law Register,* 250.

Tuck, J., delivered the opinion of this court:

The first prayer of the appellant is obviously against the intent of the Act of 1825, ch. 117.

We are not prepared to say that, under the circumstances of this case, the defendant could escape payment of the compensation he had agreed in writing to pay, even if the services were not rendered, the last year of the employment, as efficiently as before. He had reserved the option of discharging Cass, but he did not; on the contrary, he was allowed to attend the factory as he was able, and even when confined at home, the defendant constantly consulted him, thereby recognizing that he was still in his service. In such a case, it would be difficult to effect a settlement of accounts, on the principle of allowing him for his time during such consulta-

tions, or by estimating the benefit conferred on the defendant, because of the impossibility of ascertaining the value of the advice and suggestions furnished in working machinery, of which Cass was himself the inventor; and if services rendered at the shop were taken as the sole basis of settlement, the defendant would obtain the benefit of this advice for nothing. The parties themselves appear to have considered this, for they mutually rescinded the written contract by a new agreement, according to Cass's statement, (which, not being objected to, is to be considered as evidence,) by which he was to receive a fixed compensation per week, "till he was able to resume work." The date of this does not appear, but the jury may have given their verdict, according to that rate, for the time that Cass was unable to superintend the work in person; the verdict is for less than the amount claimed by the account. At any rate, the second prayer should have been confined to compensation under the original agreement, to prevent the jury from being misled, because, if granted, and they had applied that rule of settlement to the second agreement, by allowing Cass only payment, by the week, for such time as he was able to attend personally to the defendant's business, his estate would have been deprived of the benefit of Shannon's proof as to that agreement. The prayer being general in its application to the case, and not indicating to which of the contracts it was intended to refer, was properly refused.

*Judgment affirmed.*

(Decided June 15th, 1860.)